# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VANDY BUTLER,<br><br>     Plaintiff,<br><br>v.<br><br>EME, INC; EME MECHANICAL; EME SERVICE; and JOHN BODNAR,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 13) AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT (ECF No. 18)**<br><br>Case No.  2:17-cv-00140-EJF<br><br>Magistrate Judge Evelyn J. Furse |

EME, Inc., EME Mechanical, EME Service, and John Bodnar (collectively, "the EME Defendants"), move the Court[1] for summary judgment.  (Defs.' Mot. for Summ.  J. & Mem. in Supp. (Defs.' Mot.), ECF No. 13.)  The EME Defendants contend they do not owe Mr. Butler overtime because he functions as an outside salesman exempt from the Fair Labor Standards Act's ("FLSA") overtime requirements.  The EME Defendants further contend that Mr. Butler's contract and unjust enrichment claims fail because there was no meeting of the minds regarding paying Mr. Butler a fifty percent commission on net construction sales or on a final payment, and they did not receive unjust enrichment because they paid Mr. Butler a salary for his work.

The Plaintiff, Vandy Butler, cross moves for summary judgment.  (Pl.'s Mot. for Summ. J. with Supporting Mem. & Decl. (Pl.'s Mot.), ECF No. 18.)  Mr. Butler argues he functions as an inside salesman, and alternatively, the EME Defendants have not met

---

[1] Pursuant to Local Rule D.U.Civ. R. 7-1(f), the undersigned finds oral argument unnecessary and decides the Motions based on the parties' written memoranda and exhibits.

their burden of proving he acted as an exempt outside salesman.  Mr. Butler further

argues the EME Defendants breached his contract and received unjust enrichment

when they did not pay overtime pay for the weeks when he worked in excess of forty

hours.  Having carefully considered the parties' memoranda and the law, applying the

appropriate burden of production to each motion, for the reasons stated below, the

Court DENIES Mr. Butler's Cross Motion for Summary Judgment and GRANTS the

EME Defendants' Motion for Summary Judgment.

## I.    STANDARD OF REVIEW

Courts grant summary judgment when the record demonstrates "no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  Only facts "essential to the proper disposition of a claim"

qualify as material.  Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1194 (10th Cir.

2011).

> "[W]here the non moving party will bear the burden of proof at trial on a
> dispositive issue" that party must "go beyond the pleadings" and
> "designate specific facts" so as to "make a showing sufficient to establish
> the existence of an element essential to that party's case" in order to
> survive summary judgment.

McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A party asserting or disputing a

fact "must support the assertion by… citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

When applying the summary judgment standard, the court must "view the evidence and

draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Ribeau v. Katt, 681 F.3d 1190, 1194 (10th Cir. 2012) (quoting Doe v. City of Albuquerque, 667 F.3d 1111, 1122 (10th Cir. 2012)).  Where the Court is "presented with cross-motions for summary judgement," as in this case, the Court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." United States v. Sup. Ct. of N.M., 839 F.3d 888, 906–07 (10th Cir. 2016) (Manganella v. Evanston Ins. Co., 702 F.3d 68, 72 (1st Cir. 2012)).  "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." Id. (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)).  When faced with cross summary judgment motions, the court may "assume that no evidence needs to be considered other than that filed by the parties." James Barlow Family Ltd. P'ship v. David Munson, Inc., 132 F.3d 1316, 1319 (10th Cir. 1997).

## II.     MR. BUTLER'S MOTION FOR SUMMARY JUDGMENT

Mr. Butler's Motion for Summary Judgment fails because it reads as an opposition to the EME Defendants' Motion for Summary Judgment with the occasional request for summary judgment added.

Mr. Butler moves for summary judgment on the EME Defendants' affirmative defense of professional/administrative exemption to Mr. Butler's FLSA claim.  (Pl.'s Mot. 10-12, ECF No. 18.)  Because the professional/administrative exemption is an affirmative defense, the EME Defendants bear the burden of proof.  See Archuleta v. Wal-Mart Stores, Inc., 543 F.3d 1226, 1233 (10th Cir. 2008) ("While it is the employee's burden to prove that the employer is violating the FLSA ... it is the defendant employer's

burden to prove that the employee is exempt from FLSA coverage.") (citations omitted). Mr. Butler claims an exception to that exemption, namely the constant shifting of Mr. Butler's pay between hourly and salary makes the professional exemption a scam. (Id. at 11.) The EME Defendants do not assert the professional/ administrative exemption. (Def. EME, Inc.'s Opp'n to Pl.'s Mot. for Summ. J. (Defs.' Opp'n) 8, ECF No. 19.) The Court need not grant summary judgment on an affirmative defense not asserted.

Mr. Butler also contends the EME Defendants changed his work duties from salesman to include bookkeeping and payroll, preventing him from qualifying as an outside salesman. (Pl.'s Mot. 12, ECF No. 18.) Whether Mr. Butler's position constitutes an outside sales position turns on whether his primary duty is outside sales. 29 C.F.R. § 541.700. Courts consider all of the facts surrounding how the plaintiff performed the job and the employer's treatment of the job. Id. To prevail at trial, the EME Defendants would have to prove by a preponderance of the evidence that Mr. Butler worked as an outside sales person. See Lederman v. Frontier Fire Protection, Inc., 685 F.3d 1151, 1158-59 (10th Cir. 2012) (explaining the burden of proof in claiming an exemption to the FLSA). Taking the evidence in the light most favorable to the EME Defendants, they cite to evidence from which a reasonable jury and the Court could conclude Mr. Butler qualified for the outside sales exemption. (Defs.' Opp'n 8-10, ECF No. 19.) Therefore, despite Mr. Butler's contention that the EME Defendants lack sufficient evidence to show his primary duty fell into the outside sales person exception, the Court DENIESMr. Butler Summary Judgment Motion on this point because the EME Defendants have put forth sufficient evidence.

Mr. Butler also moves for summary judgment on his FLSA claim. (Pl.'s Mot. 12-16, ECF No. 18.) Where the party bearing the burden of proof at trial moves for summary judgment, he must put forth evidence to support each element of his claim, not just counter arguments made by opposing counsel. See Pelt v. Utah, 539 F.3d 1271, 1280 (10th Cir. 2008) (stating "... if the moving party bears the burden of proof, to obtain summary judgment, ... the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."). Mr. Butler's own contention that genuine disputes of material fact exist which preclude summary judgment demonstrates that Mr. Butler does not meet his burden. Indeed, Mr. Butler states "[b]ecause of the constant changing of [Mr.] Butler's employment duties and the arbitrary manner in which EME computed his pay, there are many disputed issues of fact relevant to whether [Mr.] Butler was an exempt or nonexempt employee." (Defs.' Opp'n 6, ECF No. 19.) On this basis, the Court DENIES Mr. Butler's Motion for Summary Judgment on his FLSA claim.

Mr. Butler further moves the Court for summary judgment on his contract claim. (Pl.'s Mot. 16-18, ECF No. 18.) Mr. Butler cites no contract law in support of his motion. (Id.) The only law Mr. Butler cites in support of his motion is the FLSA. The FLSA does not set forth Utah contract law. Because Mr. Butler fails to support his motion with any legal citation necessary to prove his claim, the Court DENIES his motion for summary judgment on his contract claim.

Mr. Butler moves for summary judgment on his unjust enrichment claim. (Pl.'s Mot. 18, ECF No. 18.) He cites no law and no facts in support of this portion of his

motion.  (Id.)  The Court will not research the law and scour the record to save Mr.

Butler the effort of doing so.  Therefore, the Court DENIESMr. Butler's Motion for

Summary Judgment on his unjust enrichment claim.

### III.    FACTUAL BACKGROUND

Because the Court denies Mr. Butler's Motion for Summary Judgment, the Court

considers only the material facts needed to determine the EME Defendants' Motion for

Summary Judgment for the remainder of this opinion.  All facts come from the parties'

briefings and accompanying exhibits.  The Court resolves all disputed issues of material

fact in favor of Mr. Butler.  See Ribeau v. Katt, 681 F.3d 1190, 1194 (10th Cir. 2012)

(setting forth summary judgment standard).

### A.  The Employment Contract

Mr. Butler worked for the EME Defendants from the fall of 2014 until spring of

2016.  (Butler Decl. 4, 14, ECF No. 16–2.)  Before working for the EME Defendants, Mr.

Butler approached the EME Defendants, in April 2014, about working with them.  (Butler

Dep. 12:05–17, Ex. F, ECF No. 16-1.)  The EME Defendants presented Mr. Butler with

an informal offer where Mr. Butler stood to "receive a salary of $60,000. per year

payable bi-weekly plus sales commission of 1-1/2% on your sales revenue to be paid

after we start work on each project."  (April 1, 2014 Offer Letter, Ex. A, ECF No. 16-1.)

Mr. Butler ultimately decided to work for another company called Vision Air because

"Vision Air was a two-man shop that wanted to grow, and that's what I do is build sales."

(Butler Dep. 12:18-25, Ex. F, ECF No. 16-1.)

Subsequently, on October 10, 2014, while Mr. Butler still worked for Vision Air,

the EME Defendants presented Mr. Butler with another offer to work for the EME

Defendants with an anticipated start date of November 1, 2014.  (Oct. 10, 2014 Offer

Letter, ECF No. 17-1.)  The offer letter purports to be "an informal offer of employment,"

which conditioned employment on "receiving satisfactory reference, background check

and drug test results."  (Id. at 2.)  Under this "possible offer," Mr. Butler stood to receive

a salary of $65,000 per year, "[p]lus 50% sales commission of the realized net profit on

your construction sales revenue to be paid after we are paid on each project.  (No

commission paid on the first $500,000. of construction sales)."  (Id.)  Further, the

company would give Mr. Butler "10% of the paid service sales of each customer during

their first year with [the company], beginning with your first service sale.  (No

commission on existing service customers)."  (Id.)  The offer letter continues "[a]s an

outside sales person, reasonable personal vehicle fuel costs may be reimbursed.  As

the service consultant, a company owned mobile phone will also be provided for

company work."  (Id.)  The offer letter states in the note section:  "This employment offer

is for no definite time period.  Employment or this offer may, regardless of date of

payment of wages, be terminated or withdrawn at any time without previous notice.  Any

employment is deemed to be at will of both employee and employer."  (Id. at 3.)

On October 13, 2014, Mr. Butler gave his two weeks notice with Vision Air and

agreed to work for the EME Defendants.  (Butler Decl. 3, ECF No. 16-2.)  Mr. Butler

believed the EME Defendants hired him because of his sales experience and customer

relationships.  (Butler Dep.at 14:25-15:2, 19:12-18, Ex. F, ECF No. 16-1.)

A few days before Mr. Butler's start date, the EME Defendants told Mr. Butler

that they would reduce his salary to $48,000 until Mr. Butler could acquire a contract

with Kier Construction.  (Id. 38:01-09, Ex. F, ECF No. 16-1.) On November 3, 2014, the

EME Defendants issued Mr. Butler a formal employment offer (Nov. 3, 2014 Employment Offer, Ex. E, ECF No. 13-5), which Mr. Butler accepted (Butler Dep. 38:01-24, Ex. F, ECF No. 16-1).

Under the terms of the November offer, the EME Defendants hired Mr. Butler as a "Commercial Salesman" and provided Mr. Butler a salary of $48,000 a year "[p]lus a sales commission based on the realized net profit actually earned, to be paid after we are paid for the finished project.  (No commission on the first $250,000 of construction sales)."  (Nov. 3, 2014 Offer Letter, Ex. E, ECF No. 13-5; Pl.'s Opp'n to Defs.' Mot. for Summ. J. & Supp. Mem. ("Pl.'s Opp'n")  Responses to Defs.' Statement of Undisputed Facts ("Response"), ¶ 5, ECF No. 16.) The letter does not specify the amount of the commission.  The EME Defendants also agreed to give Mr. Butler ten percent "of the paid service sales of each <u>new</u> customer [Mr. Butler] acquire[d] during [the customer's] first year with [the EME Defendants], beginning with [Mr. Butler's] first service sale.  (No commission on existing service customers)."  (Nov. 3, 2014 Offer Letter, Ex. E, ECF No. 13-5.)

The EME Defendants agreed to raise Mr. Butler's salary to $65,000 per year once Mr. Butler acquired a contract from Kier Construction.  (Butler Dep. 38:01–41:04, Ex. F, ECF No. 16-1.)  In December 2014, the EME Defendants increased Mr. Butler's salary to $65,000 per year.  (Butler Dep. 39:21-41:03, Ex. F, ECF No. 16-1; <u>c.f.</u> Dec. 25, 2014–Jan. 7, 2015 Pay Stub, doc # EME00082, ECF No. 16–1 at 95 <u>with</u> Nov. 28, 2014 – Dec. 12, 2014 Pay Stub, doc #EME00083, ECF No. 16–1 at 96.)

## B. Mr. Butler's Job Duties

While Mr. Butler worked for the EME Defendants, Mr. Butler was responsible for making construction, commercial, and HVAC sales to contractors and suppliers. (Butler Dep. at 15:20–16:03, 17:10–19, 18:11–23:14, Ex. F, ECF No. 16–1; Bodnar Dep. 9:03–09, Ex. G, ECF No. 16–1.) One of Mr. Butler's critical duties involved building and maintaining relationships with current and potential clients "[e]ither via phone, e-mail, or face-to-face visits." (Butler Dep. 23:11-14, Ex. F, ECF No. 16-1.) Mr. Butler described his process for obtaining sales for the EME Defendants as follows:

> Relationships are very important in any sales. I have had many relationships with many general contractors. I'd stay in touch with general contractors. General contractors would contact me and ask me to bid particular jobs for them. I would evaluate through estimating off of blueprints or conversation with the general contractors, find out what they want, and then see if it was viable for us to do the work and for us to make money on those jobs.

(Id. at 18:11-23.)

The EME Defendants did not provide Mr. Butler with any sales or estimating training. (Id. at 16:20-17:01.) On a typical work day, Mr. Butler arrived to the office by 7 or 7:30 in the morning, depending on his workload. (Id. at 17:05–07.) He would spend a few hours finishing paperwork and assigning staff where they needed to go. (Id. at 17:06–07.) After he completed paperwork, if he did not have an estimate due on the day or the next day, he would then go to jobsites. (Id. at 17:07–12.)

On busy days, Mr. Butler visited up to seven jobsites, but on a typical day, he would often visit three or four sites. (Id. at 20:06-14.) Mr. Butler would spend between fifteen minutes and upwards of two hours when visiting clients or potential clients during site visits, depending on what the client needed. (Id. at 22:08–23:03.) If he could not

visit particular job sites daily, then he would try to visit the sites at least three times a week. (Id. at 17:15–17.) Of all of the site visits Mr. Butler did, he estimated that he would visit potential clients two or three times a month prior to making a sale. (Id. at 18:24-19:18.)

Mr. Butler often brought estimating work home so he could "start the next morning right off on that next site." (Id. at 17:23–24.) Furthermore, Mr. Butler had a 24/7 job and "never worked 9 to 5." (Id. at 18:09-10.)

Mr. Butler job duties changed on a nearly daily basis. (Id. at 16:02-04.) Mr. Butler hired all of the individuals on his jobs and approved the invoices on his jobs before turning the invoices in to the EME Defendants. (Id. at 16:06–19.) Mr. Butler had very little supervision from the EME Defendants when visiting sites and determining which clients to pursue. (Id. at 23:15–24:02.) The EME Defendants gave Mr. Butler a fuel card that Mr. Butler used when he visited EME clients and potential clients. (Id. at 24:03–10.) The EME Defendants also provided Mr. Butler with a $50 monthly phone stipend to ensure Mr. Butler's availability for EME work. (Id. at 24:11–22.) The EME Defendants paid Mr. Butler some commissions and bonuses for his work. (See Timesheets, EME00113–115, 123-127, ECF No. 16–1 at 126–28, 136–40.)

### C. Payments

In March 2016, Mr. Butler voluntarily left his job with the EME Defendants after he relocated to Colorado. (Pl.'s Opp'n Response ¶ 44, ECF No. 16.) In 2014, Mr. Butler received $7,539.20 in wages from the EME Defendants for six weeks of work. (Pl.'s Opp'n Response ¶ 54, ECF No. 16.) In 2015, the EME Defendants paid Mr. Butler $66,284.65 in wages. (Pl.'s Opp'n Response ¶ 55, ECF No. 16.) Additionally, in

2016, the EME Defendants paid Mr. Butler $21,525.60 in wages for approximately three months of work.  (Pl.'s Opp'n Response ¶ 56, ECF No. 16.)

In September 2016, the EME Defendants offered Mr. Butler "a final taxable bonus payment on $8,790.75 gross wages" to reflect full and final payment for all of his work for the EME Defendants.  (Pl.'s Opp'n Response ¶¶ 45–46, ECF No. 16; Offer Letter, doc # EME00014, Ex. I, ECF No. 13-9.)  Mr. Butler did not accept,[2] the EME Defendants' payment offer.  (Pl.'s Opp'n Response ¶¶ 47–53, ECF No. 16.)

## IV.    DISCUSSION

The EME Defendants contend that because Mr. Butler falls within the outside salesman exemption of the FLSA, they did not have to pay Mr. Butler overtime pay. (Defs.' Mot. 12–17, ECF No. 13.) The EME Defendants further argue that Mr. Butler's breach of contract claim fails because there was no meeting of the minds between the parties regarding paying Mr. Butler a fifty percent commission on net profit of construction sales or paying Mr. Butler $8,790.75 as a bonus.  (Id. at 17–24.)  The EME Defendants also contend that Mr. Butler's unjust enrichment claim fails because they compensated Mr. Butler for his work through his salary.  (Id. at 24–25.)

Mr. Butler counters that he worked as an inside salesman, and alternatively, the EME Defendants have not met their burden of proving that he qualified as an exempt outside salesman.  (Pl.'s Opp'n 25–29, ECF No. 16.)   Mr. Butler further argues the

---

[2] Mr. Butler does not deny the EME Defendants' assertion of this fact but merely adds to it that Mr. "Butler was not owed a bonus; he was owed commissions, wages, and overtime."  (Pl.'s Opp'n Response ¶ 48, ECF No. 16.)  The Deposition testimony Mr. Butler cites supports the concept he received commissions, not bonuses, but never addresses the September 2016 offer.  (Butler Dep. 49-50, Ex. F, ECF No. 16-1.) Therefore, under Federal Rule of Civil Procedure 56(e)(2), the Court deems the lack of acceptance admitted.

EME Defendants breached his employment contract when they failed to pay him overtime pay for the weeks he worked more than forty-hours. (Pl.'s Opp'n 33–35, ECF No. 16.) Mr. Butler also contends the EME Defendants unjustly enriched themselves "at Mr. Butler's expense" when they "reduced [Mr.] Butler's income by subjectively treating him as a nonexempt employee when it best suited [them], and conversely, when [they] benefitted from Butler[']s over 80-hours per week and only paying him his salary instead of the additional hours worked." (<u>Id.</u> at 36.) The Court will first address Mr. Butler's FLSA claim.

## A. Fair Labor Standards Act Claim

The EME Defendants argue that the Court should grant them summary judgment on Mr. Butler's overtime FLSA claim because Mr. Butler worked as an outside salesman exempt from the FLSA's overtime pay requirement.

### 1. The Fair Labor Standards Act

Congress enacted the FLSA to improve "labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). In furtherance of the FLSA's aim, the FLSA requires employers to pay time and one-half to non-exempt employees who work more than forty hours a week. <u>See</u> 29 U.S.C. § 207(a)(2)(C). Employers, however, do not have to provide overtime pay to an outside salesman (as defined by the Secretary of the Department of Labor ("DOL")). 29 U.S.C. § 213(a)(1). The EME Defendants move for summary judgment on the grounds that Mr. Butler falls within the outside salesman exemption. (Defs.' Mot. 12–17, ECF No. 13.) Mr. Butler argues that he does not fall within the outside salesman exemption because he predominately

performed nonexempt work, and the EME Defendants frequently adjusted his salary to where the EME Defendants essentially paid him an hourly wage. (Pl.'s Opp'n 25–33, ECF No. 16.)

Courts narrowly construe exemptions to the FLSA's overtime requirement, and employers bear the burden of establishing that employees fit "plainly and unmistakenly" within the exemption. <u>Reich v. Wyoming</u>, 993 F.2d 739, 741 (10th Cir. 1993). Both parties agree the FLSA covers Mr. Butler's employment. (Defs.' Mot. 12–17, ECF No. 13; Pl.'s Opp'n 25–33, ECF No. 16.) The parties dispute, however, whether the FLSA's outside salesman exemption applies to Mr. Butler.

### 2. **Mr. Butler's FLSA Claim Fails Because Mr. Butler Falls Within the Outside Salesman Exemption**

The EME Defendants argue the outside salesman exemption applies to Mr. Butler because Mr. Butler's own testimony shows he primarily engaged in making sales and regularly worked away from the office when completing sales and his sales-related responsibilities. (Defs.' Mot. 12–17, ECF No. 13.) The EME Defendants further argue Mr. Butler's own testimony demonstrates that any additional job duties performed were incidental to Mr. Butler's sales work. (<u>Id.</u> at 15.) Mr. Butler contends he does not fall within the outside salesman exemption because he performed tasks associated with nonexempt work, and the EME Defendants constantly changed his job duties and adjusted his pay to that of an hourly employee. (Pl.'s Opp'n 25–33, ECF No. 16.) Mr. Butler further contends genuine issues of material fact exist as to how much time Mr. Butler spent in the office, which precludes granting summary judgment for the EME Defendants. (<u>Id.</u> at 7.)

To prevail at trial, the EME Defendants would have to prove by a preponderance of the evidence that Mr. Butler worked as an outside sales person. See Lederman, 685 F.3d at 1158-59 (explaining the burden of proof in claiming an exemption to the FLSA). When the moving party also bears the burden of proof at trial, it must put forth evidence to support each element of its claim. See Pelt, 539 F.3d at 1280 (stating "... if the moving party bears the burden of proof, to obtain summary judgment, ... the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case.").

The EME Defendants and Mr. Butler agree that Mr. Butler made sales while employed with the EME Defendants. See 29 U.S.C. §§ 213(a)(1), 203(k). The EME Defendants contend Mr. Butler's activities qualify him as an outside salesman. When evaluating an FLSA exemption, whether the employee's activities qualify for an exemption presents a question of law. Reich, 993 F.2d at 741. Thus, the Court must determine whether Mr. Butler qualifies for the FLSA's outside salesman exemption. The Court concludes Mr. Butler does fall within the outside salesman exemption.

The FLSA exempts "any employee employed … in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). The FLSA Regulations describe an outside salesman as any employee:

(1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

14

29 C.F.R. § 541.500(a) (emphasis added). The FLSA does not require an employer to pay an outside salesman a minimum salary or pay on a salary or fee basis. See 29 C.F.R. § 541.500(c). The FLSA Regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Courts consider the following, non-exclusive list of relevant factors when determining an employee's primary duty:

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

Id. While "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee," 29 C.F.R. § 541.700(b), the "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole," 29 C.F.R. § 541.700(a). The FLSA Regulations explicitly acknowledge that employees spending less than fifty "percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b). Furthermore, "work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections" as well as "work that furthers the employee's sales efforts" also qualifies as exempt outside sales. 29 C.F.R. § 541.500(b).

To determine whether the FLSA's overtime requirements apply to Mr. Butler, the Court must first determine Mr. Butler's primary job duties. Generally, how an employee spends his time presents a fact question. Reich, 993 F.2d at 741. Although the EME

15

Defendants and Mr. Butler dispute whether the activities Mr. Butler performed qualify him as an exempt or nonexempt employee (compare Defs.' Mot. 12–17, ECF No. 13 with Pl.'s Opp'n 25–33, ECF No. 16), the parties do not dispute how Mr. Butler spent his time.  On the contrary, for purposes of Summary Judgment, the EME Defendants accept Mr. Butler's testimony given in his deposition as true.  (Defs.' Reply 21, ECF No. 17.)  Mr. Butler claims "a plethora of 'disputed facts'" but fails to tie the disputes in his fact section to his argument section, fails to cite evidence that supports his disputes, and admits most of the material facts for determining exempt status.  (Pl.'s Opp'n 26 & 8-13, ECF No. 16.)  The only specific factual dispute mentioned concerns how much time Mr. Butler spent in the office, (id. at 7), however, Mr. Butler admits to all[3] of the facts mentioned in the fact section pertaining to Mr. Butler regularly being away from the office, (id. at 12-13).

Mr. Butler specifically argues this case presents "strikingly" similar facts to the facts in Lederman, 685 F.3d 1151, where the jury found for the plaintiff, and "a rational jury in all likelihood would find the same here."  (Pl.'s Opp'n 6, ECF No. 16.)  Mr. Butler's argument fails to recognize the lack of disputed facts in this case, and the consequence of that lack.

In Lederman, the district court gave the jury oral instructions that conflicted with the written instructions regarding the defendant's burden of proof.  Lederman, 685 F.3d at 1154.  The Tenth Circuit found the improper instruction likely prejudiced the

---

[3] Mr. Butler interposes one objection to the statement "Because of Butler's extensive sales responsibilities, he was often away from the office."  (Pl.'s Opp'n Response ¶ 17, ECF No. 16.)  He objects that the term "often" is vague and then quotes a portion of Mr. Butler's deposition that offers no further clarification or contradiction.  (Id.)  Because Mr. Butler fails to address the EME Defendants' proffered fact properly, the Court considers the fact undisputed for purposes of the Motion.  See Fed. R. Civ. P. 56(e)(2).

defendant and reversed the jury's verdict and remanded the case to the district court. Id. at 1158–60.  The Tenth Circuit in Lederman did not suggest that the jury would likely still find for the plaintiff under the appropriate standard of proof.  Id. at 1160.  Rather, the Tenth Circuit found it could not affirm because the parties had presented numerous disputed issues of fact to the jury material to the outside salesman decision.  Id. at 1159, 1160 n.4.

In Lederman, the parties presented conflicting evidence as to how much time the plaintiff spent away from the defendant's place of business.  Id. at 1159.  The parties also presented conflicting evidence regarding the plaintiff's "authority to finalize sales." Id.  Similar conflicts do not exist in this case.  Mr. Butler argues "conflicting evidence can be presented regarding the time [Mr.] Butler spent out of EME's place of business." (Pl.'s Opp'n 7, ECF No. 16.)  Mr. Butler, however, presents no such evidence.  He cites his own deposition testimony, where he states he would sometimes visit up to seven jobsites on a busy day, but on a typical day he would visit three or four sites.  Mr. Butler would spend between fifteen minutes and upwards of two hours when visiting clients or potential clients during site visits, depending on what the client needed.  The EME Defendants do not contest Mr. Butler's deposition testimony nor dispute how Mr. Butler spent his time.  Therefore, Mr. Butler fails to put forth evidence to establish a genuine issue of material fact.  Based on Mr. Butler's own deposition testimony, and the evidence in the record, the Court must determine as a matter of law whether Mr. Butler's undisputed activities fall within the outside salesman exemption.  While FLSA exemptions are fact intensive determinations, the court determines the availability of the exemption, and the factfinder reviews disputed facts.  See Deherrera v. Decker Truck

<u>Line, Inc.</u>, 820 F.3d 1147, 1154 (10th Cir. 2016)).  Where the material facts remain undisputed, the court can appropriately grant summary judgment on an FLSA exemption.  <u>Id.</u> at 1158-59.

Mr. Butler characterized his job as one in which he dealt with construction, commercial, and HVAC sales.  Building and maintaining relationships with current and prospective clients was one of Mr. Butler's critical job duties.  On a typical work day, Mr. Butler arrived to the office by 7 or 7:30 in the morning, depending on his workload.  He would spend a few hours finishing paperwork and assigning staff where they needed to go.  After he completed paperwork, if he did not have an estimate due on the day or the next day, he would then go to jobsites.  On some days, Mr. Butler visited seven jobsites, but, in a typical day, he would often visit three or four sites.  Mr. Butler would spend between fifteen minutes and upwards of two hours when visiting clients or potential clients during site visits, depending on what the client needed.  If he could not visit particular job sites daily, then he would try to visit the sites at least three times a week.  Mr. Butler also brought work home with him in preparation for visiting job sites the following morning.  By Mr. Butler's own admission, his job was more 24/7 and never nine to five.

Mr. Butler bears the external indicia of an outside salesman.  The EME Defendants predominately hired him for his sales experience and connections.  The EME Defendants did not have to train Mr. Butler to perform sales work.  Mr. Butler often visited clients and prospective clients away from the office, with minimal supervision from the EME Defendants, and the EME Defendants rewarded Mr. Butler with incentive pay in the form of commissions and bonuses.

Moreover, concluding that Mr. Butler falls within the outside salesman exemption promotes the purpose and spirit of the exemption. As the Court stated in Jewel Tea Co. v. Williams, 118 F.2d 202, 207-08 (10th Cir. 1941):

> The reasons for excluding an outside salesman are fairly apparent. Such [a] salesm[a]n, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

Id. Moreover, the exemption "'is premised on the belief that exempt employees 'typically earned salaries well above the minimum wage' and enjoyed other benefits that 'se[t] them apart from the nonexempt workers entitled to overtime pay.'" Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 166 (2012) (citation omitted). Mr. Butler earned a salary of upwards of $65,000 per year, had minimal supervision from the EME Defendants, often worked away from the office when visiting clients at job sites, received a monthly fuel card and phone stipend so he could be available for EME work at any time, took work home to prepare for the next work day, and generated additional income through commissions and bonuses. Congress did not enact the FLSA to protect an employee like Mr. Butler.

Mr. Butler's arguments against applying the exemption do not persuade the Court. Mr. Butler argues that the EME Defendants "constant[ly] changed his "employment duties" and "arbitrar[ily]" "computed his pay." (Pl.'s Opp'n 7, ECF No. 16.) Mr. Butler contends his accounting and payroll duties "were those of a nonexempt

employee." (Pl.'s Opp'n 33, ECF No. 16.)  While employed with the EME Defendants,

Mr. Butler hired all of the individuals for his jobs himself and approved or disapproved

invoices for his jobs before turning the invoices in to the EME Defendants.  Performing

accounting or payroll duties does not defeat the exemption if Mr. Butler performs the

duties incidental to or in conjunction with his exempt work as an outside salesman.  See

29 C.F.R. § 541.500(b).  "Other work that furthers the employee's sales efforts also

shall be regarded as exempt work including, for example, writing sales reports, updating

or revising the employee's sales or display catalogue, planning itineraries and attending

sales conferences."  29 C.F.R. § 541.500(b).  Mr. Butler's handling of the invoices and

then presenting the invoices to the EME Defendants constitutes the collections activities

contemplated by 29 C.F.R. § 541.500(b).  While Mr. Butler performs nonexempt work,

the FLSA Regulations make clear that his exempt duties need not constitute the only

work he performs or even fifty percent of his work.  See 29 C.F.R. § 541.700(b).  The

relative importance of Mr. Butler's exempt duties as compared with his other duties, his

relative freedom from direct supervision, the reason he was hired, the provisions

contemplated for his pay, and his actual pay all point to his position falling "plainly and

unmistakably" under the outside salesman exception.

Mr. Butler further argues the EME Defendants cannot evoke the FLSA

professional exemption because they frequently reduced Mr. Butler's salary whenever

he exceeded forty-hours per week, which supports a finding that the EME Defendants

paid Mr. Butler a "sham" salary.  (Pl.'s Opp'n 30–32, ECF No. 16.)  Mr. Butler cites

Archuleta v. Wal-Mart Stores, Inc., 543 F.3d 1226 (2008), for the proposition that the

FLSA denies an employer its ability to claim the professional exemption when the

employer makes salary adjustments to circumvent the salary requirement of the FLSA. (Pl.'s Opp'n 26, ECF No. 16.)  However, the EME Defendants do not argue that the professional exemption applies.  (Defs.' Reply 21–22, ECF No. 17.)  Rather, the EME Defendants "only argued for an 'outside salesman' exemption."  (Id. at 22.)  The salary requirements under the FLSA do not apply to the outside salesman exemption.  See 29 U.S.C. § 541.500(c).  The salary requirements of the FLSA only apply to the "exempt executive, administrative, or professional employees."  29 U.S.C. § 213(a)(1).  The EME Defendants do not need to prove that the professional exemption also applies.  The EME Defendants need only raise "at least one legally sufficient defense that would bar [Mr. Butler's] claim and that involves no triable issue of fact."  Archuleta, 543 F.3d at 1232–33.  The Court concludes the EME Defendants have met their burden of showing the outside salesman exemption applies.  Therefore, the Court GRANTS the EME Defendants' Motion for Summary Judgment on Mr. Butler's FLSA claim.

## B.  Breach of Contract Claim

The EME Defendants argue that Mr. Butler's contract claim fails because the parties never had a meeting of the minds on a fifty percent commission that the parties only discussed during preliminary negotiations.  (Defs.' Mot. 18–21, ECF No. 13.)  The EME Defendants further argue that the parties never had a meeting of the minds with respect to the $8,790.75 bonus, and alternatively, the bonus agreement did not contain sufficiently definite language to require enforcing the agreement.   (Id. at 21–24.)  Mr. Butler fails to address the argument that the EME Defendants and Mr. Butler did not mutually assent to either the fifty percent commission or the $8,790.75 bonus.  Instead, Mr. Butler seems to reargue his FLSA claim and counters that the EME Defendants

breached the employment contract Mr. Butler agreed to on November 3, 2014, when the EME Defendants "unilaterally" decided whether Mr. "Butler would be treated as an exempt or nonexempt employee." (Pl.'s Opp'n 34, ECF No. 16.)

Despite Mr. Butler's failure to address the EME Defendants' arguments, the Court must consider the merits of the EME Defendants' Motion and supporting documents to determine whether the EME Defendants have sufficiently shown that genuine issues of material fact do not exist, entitling them to judgment as a matter of law on Mr. Butler's contract claim. Where "the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." Reed v. Bennett, 312 F.3d 1190, 1194–95 (10th Cir. 2002). Thus, the EME Defendants, as the moving parties, have the burden to show that genuine issues of material fact do not exist, and Mr. Butler cannot prove breach of contract as a matter of law. The Court finds the EME Defendants have met their burden and grants the EME Defendants' Motion on Mr. Butler's contract claim. The Court first addresses the EME Defendants' arguments regarding the fifty percent commission.

### 1. **Fifty Percent of Commissions on Net Profit of Construction Sales**

To sustain a claim for breach of contract, Mr. Butler must show the existence of "(1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages." Eleopulos v. McFarland & Hullinger, LLC, 2006 UT App 352, ¶ 9,145 P.3d 1157 (quoting Bair v. Axiom Design, L.L.C., 2001 UT 20, ¶ 14, 20 P.3d 388). To prove the existence of a contract, the party claiming the contract must

show an offer and acceptance. <u>1-800 Contacts, Inc. v. Weigner</u>, 2005 UT App 523, ¶ 2, 127 P. 3d 1241. To have an enforceable contract, the parties must have "a meeting of the minds as to all essential features of a contract." <u>Terry v. Bacon</u>, 2011 UT App 432, ¶ 21, 269 P.3d 188. "In determining whether the parties created an enforceable contract, a court should consider all preliminary negotiations, offers, and counteroffers and interpret the various expressions of the parties for the purpose of deciding whether the parties reached agreement on complete and definite terms." <u>1-800 Contacts</u>, 2005 UT App 523 at ¶ 4 (quoting <u>Nunley v. Westates Casing Servs., Inc.</u>, 1999 UT 100, ¶ 22, 989 P.2d 1077).

The EME Defendants argue they do not owe Mr. Butler fifty percent commissions on net construction sales because the parties only discussed a fifty percent commission during preliminary negotiations, and the parties did not reach a meeting of the minds with respect to the percentage of the sales commission. (Mot. 18–21, ECF No. 13.) The EME Defendants' October 10, 2014 informal offer included a fifty percent commission on net construction sales for Mr. Butler. The October 2014 offer also unequivocally reserved the EME Defendants' right to rescind or modify their offer by stating "[e]mployment or this offer may, regardless of date of payment of wages, be terminated or withdrawn at any time without previous notice." (Oct. 10, 2014 Offer Letter, ECF No. 17-1.) The EME Defendants further conditioned the October 2014 offer on satisfactory references, a drug test, and a background check.

Mr. Butler admits the EME Defendants rescinded the offer when they called him approximately three days before his start date and reduced the offered salary to $48,000 per year until he secured a contract with Kier Construction. "An agreement

cannot be enforced if its terms are indefinite or demonstrate that there was no intent to contract." 1-800 Contacts, Inc., 2005 UT App 523 at ¶ 9 (quoting Richard Barton Enters. v. Tsern, 928 P.2d 368, 373 (Utah 1996)). The parties had not yet formed a contract with the October 2014 offer because the EME Defendants made Mr. Butler a conditional job offer. The offer letter required Mr. Butler to pass drug and background checks and also provide satisfactory references. Additionally, the EME Defendants had "unequivocally reserved the right to rescind or modify [their] offer…." 1-800 Contacts, Inc., 2005 UT App 523 at ¶ 9. Mr. Butler has not come forward with facts to suggest that the EME Defendants intended the October 2014 to be a contract. In this October letter, the EME Defendants expressly stated they did not intend to create a binding contract until Mr. Butler passeda drug test, background check, and provided satisfactory references. Mr. Butler offers no evidence to suggest these things happened prior to the call modifying the EME Defendants' offer. Thus the October 2014 letter did not create a binding contract requiring the EME Defendants to pay a 50% commission on sales.

Also worthy of note, when the parties first talked in April 2014, the EME Defendants offered Mr. Butler a 1.5% commission on sales as part of a salary package, and Mr. Butler rejected that offer.

On November 3, 2014, the EME Defendants presented Mr. Butler with another offer, which Mr. Butler concedes he accepted. The November 3, 2014 offer includes commissions on net sales but does not provide a percentage amount or method of calculation. "'[A]n agreement cannot be enforced if its terms are indefinite.'" Prince, Yeates & Geldzahler v. Young, 2004 UT 26, ¶ 13, 94 P.3d 179 (quoting Nielsen v. Gold's Gym, 2003 UT 37, ¶ 11, 78 P.3d 600). Further, "[s]o long as there is any

uncertainty or indefiniteness, or future negotiations or considerations to be had between the parties, there is not a completed contract.  In fact, there is no contract at all." Id. at ¶ 17 (quoting Candland v. Oldroyd, 248 P. 1101, 1102 (1926)).  The November contract clearly includes a provision for commissions on net sales but no specific percentage or method of calculation.  The only facts before the Court to indicate the appropriate percentage are a rejection by Mr. Butler of an offer including 1.5% commission and a rescission by the EME Defendants of an offer including a 50% commission.   Mr. Butler has not come forward with facts  suggesting the parties formed an enforceable contract or giving the Court any basis on which to award a certain commission.  As a result, Mr. Butler's contract claim with respect to his fifty percent commission fails.

### 2.  The $8,790.75 Offered Bonus

The EME Defendants further argue Mr. Butler has no right to the $8,790.75 bonus they offered him because Mr. Butler altered the terms of their offer by including a time for performance and changing the amount of the bonus if the EME Defendants did not meet the time of performance.  (Mot. 21–22, ECF No. 13.)   "An acceptance must unconditionally assent to all material terms presented in the offer, including price and method of performance, or it is a rejection of the offer." 1-800 Contacts, 2005 UT App 523 at ¶ 2 (quoting Cal Wadsworth Constr. v. City of St. George, 898 P.2d 1372, 1376 (Utah 1995)).  Mr. Butler admits he did not accept the EME Defendants' offer.  As a result, the parties did not form a contract.  Mr. Butler has not come forward with facts to suggest otherwise.  Therefore, the EME Defendants do not owe Mr. Butler $8,790.75 under the 2016 offer letter.

Mr. Butler does not contest the basis for the EME Defendants' Motion for Summary Judgment on his contract claim.  Mr. Butler's arguments ignore the EME Defendants' arguments that the parties did not mutually assent to paying Mr. Butler fifty percent of net profit on construction sales as commissions or paying Mr. Butler $8,790.75 as a bonus.  Mr. Butler fails to present facts suggesting genuine issues of material fact exist regarding the commissions and the bonus.  Instead, Mr. Butler focuses on overtime pay.  As discussed above, the Court concludes Mr. Butler falls within the outside salesman exemption, and thus the Court concludes the EME Defendants do not owe Mr. Butler overtime pay.  Without presenting opposing arguments addressing the EME Defendants' commission and bonus arguments, the Court has no choice but to conclude Mr. Butler concedes that the EME Defendants and Mr. Butler did not mutually assent to giving Mr. Butler fifty percent of net profit on construction sales as commission or paying Mr. Butler the $8,790.75 bonus.  The Court thus GRANTS the EME Defendants' Motion for Summary Judgment on Mr. Butler's contract claim.

### C.  Unjust Enrichment Claim

The EME Defendants argue Mr. Butler cannot prove unjust enrichment because he received compensation for his work, is not entitled to overtime pay because of the outside salesman exemption, and the EME Defendants had no contractual obligation to pay a set bonus or commission.  (Defs.' Mot. 25, ECF No. 13.)

Mr. Butler reargues his FLSA claim by contending the EME Defendants unjustly enriched themselves when they failed to pay him overtime for the weeks he worked

over forty-hours.  (Pl.'s Opp'n 35-36, ECF No. 16.)  The Court concludes Mr. Butler

failed to come forward with evidence to support his unjust enrichment claim.

To prevail on an unjust enrichment claim, Mr. Butler must prove:

> "(1) [A] benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."

Jeffs v. Stubbs, 970 P.2d 1234, 1247–48 (Utah 1998) (quoting American Towers

Owners Assoc. v. CCI Mechanical, 930 P.2d 1182, 1192 (Utah 1996)).  Moreover, "a

prerequisite for recovery on an unjust enrichment theory is the absence of an

enforceable contract governing the rights and obligations of the parties relating to the

conduct at issue.'"  Ashby v. Ashby, 2010 UT 7, ¶ 14, 227 P.3d 246, 250–51.

Because the Court finds the November 3, 2014 contract unenforceable for

indefiniteness, Mr. Butler can assert an unjust enrichment claim.  Mr. Butler put forward

evidence that he worked for the EME Defendants.  EME clearly knew Mr. Butler

performed work on their behalf.  Thus, Mr. Butler puts forth evidence sufficient to meet

the prerequisite and the first two elements of an unjust enrichment claim.  The third

element, acceptance of a benefit under inequitable circumstances, presents the

problem for Mr. Butler.

"It is not enough that benefit was conferred on the defendant, rather, the

enrichment to the defendant must be unjust in that the defendant received a true

windfall or 'something for nothing.'"  Richards v. Brown, 2009 UT App 315, ¶ 29, 222 P.

3d 69, 79 (quoting Emergency Physicians Integrated Care v. Salt Lake Cty., 2007 UT

72, ¶ 26, 167 P.3d 1080).  The EME Defendants have put forth evidence that they paid

Mr. Butler for his work, thus they claim Mr. Butler cannot show they received something for nothing. Mr. Butler argues the "something" the EME Defendants got was Mr. Butler's overtime work. (Pl.'s Opp'n 36, ECF No. 16.) However, the Court concluded that the EME Defendants did not have to pay Mr. Butler overtime because he constituted an exempt outside salesman under the FLSA. Mr. Butler has not presented any additional argument or facts to support his unjust enrichment theory. Therefore, Mr. Butler fails to show that the EME Defendants "received a true windfall or 'something for nothing.'" Id. at ¶ 29. Accordingly, the Court GRANTS the EME Defendants' Motion for Summary Judgment as to Mr. Butler's unjust enrichment claim.

### D. Treble Damages Claim

The EME Defendants argue, to the extent Mr. Butler seeks treble damages under Utah Code section 76–6–412, the criminal statute does not apply in this civil case because the Court has not made a finding of any criminal misconduct. (Defs.' Mot. 25-26, ECF No. 13.) Mr. Butler fails to address the EME Defendants' argument. Looking at the statute, the Court agrees with the EME Defendants. Section 76–6–412 of the Utah Criminal Code classifies the different levels of criminal theft. See State v. Robertson, 2016 UT App 53, ¶ 4, 370 P.3d 578, 579 (applying statute to determine severity of criminal offense). The section also provides a plaintiff with treble damages in a civil case, if a court finds an individual violated other sections of the criminal code[4] not material to this case. Utah Code Ann. § 76–6–412(2). Because Mr. Butler has not alleged, nor has a court found the EME Defendants violated any provisions of the Utah Criminal Code, the Court concludes Mr. Butler cannot seek damages under Utah Code

---

[4] Utah Code Ann. §§ 76–6–408(1),–413, or –412(1)(b)(iii).

section 76-6-412.  Therefore, the Court GRANTS the EME Defendants' Motion for Summary Judgment on Mr. Butler's treble damage claim.

## V.    CONCLUSION

For the reasons stated above, the Court GRANTS the EME Defendants' Motion for Summary Judgment on all of Mr. Butler's claims.  The Court further DENIES Mr. Butler's Cross Motion for Summary Judgment.

DATED this 18th day of May, 2018.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge